**Edward J. WILSMANN, Plaintiff,**

v.

**UPJOHN COMPANY, et al., Defendants.**

**No. K77–317 CA**

United States District Court,
W.D. Michigan, S.D.

April 11, 1984.

See also 572 F.Supp. 242.

Gordon C. Miller, Richard C. Walsh, Walsh, Miller, Rayman & Langeland, Kalamazoo, Mich., for plaintiff.

Thomas G. Parachini, Dirk Holkeboer, Brown, Colman & Dement, Kalamazoo, Mich., Charles Lister, Covington & Burling, Washington, D.C., for defendants.

## OPINION

BENJAMIN F. GIBSON, District Judge.

This matter was tried to a jury over ten trial days. At the close of the proofs, and after due deliberation, the jury returned a verdict for the plaintiff in the amount of $1,578,107.00. Now before the Court is defendants' motion, pursuant to Rules 50 and 59, Fed.R.Civ.P., for judgment notwithstanding the verdict and new trial. For the reasons set out below, the motion is denied.

The legal standards to be applied on these motions are clear. In *Morelock v. NCR Corp.*, 586 F.2d 1096, 1104–1105 (6th Cir.1978) (citations omitted), the court stated:

> The issue raised by a motion for a judgment n.o.v. is whether there is sufficient evidence to raise a question of fact for the jury.... This determination is one of law to be made by the trial court in the first instance .... In determining whether the evidence is sufficient, the trial court may neither weigh the evidence, pass on the credibility of witnesses nor substitute its judgment for that of the jury. Rather, the evidence must be viewed in the light most favorable to the party against whom the motion is made, drawing from that evidence all reasonable inferences in his favor.... If, after thus viewing the evidence, the trial court is of the opinion that it points so strongly in favor of the movant that reasonable minds could not come to a different conclusion, then the motion should be granted.

■ In contrast to testing the legal sufficiency of the evidence in a motion for judgment n.o.v., a motion for new trial "is confined almost entirely to the exercise of discretion on the part of the trial court." *Allied Chemical Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36, 101 S.Ct. 188, 190, 66 L.Ed.2d 193 (1980). A new trial may be granted where the verdict rendered is contrary to the clear weight of the evidence, or excessive, or to prevent a miscarriage of justice. *Peacock v. Board of Regents*, 597 F.2d 163 (9th Cir.1979). A new trial would also be warranted when a verdict is reached on account of bias, passion, prejudice, corruption or other improper motive. *King v. Ford Motor Co.*, 597 F.2d 436 (5th Cir.1979). However, a trial court does not properly grant a new trial merely because it might have come to a result different from that reached by the jury. *Rios v. Empresas Lineas Maritimas Argentinas*, 575 F.2d 986 (1st Cir.1978).

The defendants have asserted two grounds for each type of relief sought. They seek a j.n.o.v. on the grounds that the stock sold by the plaintiff was not a security within the meaning of the Securities Exchange Act of 1934 and that the action was barred by the statute of limitations. They seek a new trial on the grounds that the Court erred in not allowing the jury to decide the statute of limitations issue and in allowing irrelevant and prejudicial testimony to be presented to the jury.

■ The defendants' first argument in support of their motion for a judgment n.o.v. is that the transaction upon which the lawsuit was based did not involve "securities" within the meaning of the federal securities laws. *See, e.g.*, 15 U.S.C. § 78c(a)(10). The defendants argue that the Court should apply the "economic realities test" to determine whether this transaction falls within the scope of the securities laws. *See United Housing Foundation v. Forman*, 421 U.S. 837, 848–51, 95 S.Ct. 2051, 2058–60, 44 L.Ed.2d 621 (1975); *Union Planters National Bank v. Commercial Credit Business Loans*, 651 F.2d 1174, 1180–81 (6th Cir.1981). More specifically, the defendants seek to have the Court apply the "sale of business doctrine," see *Fredericksen v. Poloway*, 637 F.2d 1147 (7th Cir.1981), and hold that the transaction does not fall within the scope of the securities laws because Upjohn purchased all of the stock of Homemakers, including that stock owned by the plaintiff.

In its Opinion of February 9, 1983, this Court decided that the sale of business doctrine should not be applied. This decision was based on *Golden v. Garafalo*, 678 F.2d 1139 (2d Cir.1982), in which the sale of business doctrine was rejected by the Second Circuit. The Court still is persuaded by the reasoning in *Golden*.

As the Second Circuit noted, 678 F.2d at 1144, the economic realities test was applied in *Forman* as the second part of a two-part test. It was applied only after the Supreme Court determined that the instruments in question, although called "stock," did not possess the "characteristics traditionally associated with stock." 421 U.S. at 851, 95 S.Ct. at 2060. These characteristics include the right to receive dividends, negotiability, and whether the instruments can be pledged or hypothecated, confer voting rights in proportion with the number of shares owned, and appreciate in value. Only after these characteristics were found not to be present did the Court apply the economic realities test. *Id.*

The Court is persuaded by the Second Circuit's reasoning in *Golden* regarding the significance of this two-part test:

Having first determined that the shares were not stock, the Court went on to determine whether they were an "investment contract" and applied the three-pronged "economic reality" test of [*SEC v. W.J. Howey Co.*, 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244 (1945)]. The actual analysis utilized in *Forman*, therefore, is inconsistent with the sale of business doctrine. If "economic reality" is the universal jurisdictional test under the [Securities] Acts, no matter what the facial or legal character of the instrument, there was no need to examine whether the ... shares were stock according to conventional criteria, since an affirmative answer would have been irrelevant. The doctrine thus seems to assume that a major part of the discussion in *Forman* was pointless.

678 F.2d at 1144. In the instant case, because, in the plaintiff's hands, the stock which was sold to Upjohn possessed all of the aforementioned characteristics, it was not necessary to proceed to the second step of the *Forman* analysis.

The Court also finds significant the fact that, in the leading cases dealing with the sale of business doctrine, the allegedly defrauded party was the purchaser of the "stock." *See Landreth Timber Co. v. Landreth*, 731 F.2d 1348 (9th Cir.1984); *Sutter v. Groen*, 687 F.2d 197 (7th Cir. 1982); *Fredericksen v. Poloway*, 637 F.2d 1147 (7th Cir.1981). The Seventh Circuit itself noted this distinction in *McGrath v. Zenith Radio Corp.*, 651 F.2d 458 (7th Cir. 1981). In determining that the sale of business doctrine did not apply when a purchaser allegedly committed fraud in purchasing all of the stock of a company when the stock constituted "securities" in the hands of the sellers the court stated:

To conclude otherwise would be to hold that a purchaser of corporate shares may deprive investors/sellers of the protections of the securities laws if it can arrange that all of the corporation's shares are purchased at one time. Whatever the breadth of language, clearly *Frederiksen* does not require such a result.

651 F.2d at 468 n. 5. This reasoning is equally appropriate where three shareholders sell the stock as when a large number of shareholders sell their stock. For all of these reasons, the Court is of the opinion that this action properly was brought under the Securities Exchange Act of 1934.

■ The defendants also seek j.n.o.v., as well as a new trial, on the ground that the Court improperly ruled that the plaintiff's lawsuit was not time-barred as a matter of law. This ruling was based on the fact that the original agreement would not necessarily have been completed until the "back-end" payment was made. As the Court noted in its Opinion of October 28, 1980 in this matter, at 5, "[n]o bonus payment was due until July 1, 1971, which is within the six-year [limitations] period." After considering the evidence adduced at trial, the Court determined that, as a matter of law, this was the point at which the fraud reasonably should have become ap-

parent and the point at which the limitations period began to run. The defendants have made no arguments which the Court did not consider in its prior rulings on this matter and therefore, for the reasons already stated, the motions for judgment n.o.v. and for new trial based on the statute of limitations are denied.

The final ground asserted for a new trial is that the defendants were prejudiced by the admission of certain testimony regarding the current value of Upjohn Health-Care Services and that this prejudice was not cured by a later instruction to the jury to disregard the testimony. The Court finds this argument to be without merit.

The defendants argue that this testimony created an impression that the plaintiff had been underpaid for his share of Homemakers-Illinois. Presumably, this would have increased the award of damages. The Court, however, is of the opinion that the defendants have not made any showing of prejudice because of this testimony.

■ First, the Court assumes that the jury followed the instructions given to it, see, e.g., *Parker v. Randolph*, 442 U.S. 62, 73, 99 S.Ct. 2132, 2139, 60 L.Ed.2d 713 (1979), including the instruction to disregard this testimony. Second, the Court believes that the amount of damages awarded by the jury "was *clearly* within 'the maximum limit of a reasonable range.'" *Smith v. John Swafford Furniture Co.*, 614 F.2d 552, 553 (6th Cir.1980) (emphasis in original). This is particularly true in light of the fact that the defendants chose to present no evidence relating to the value of the plaintiff's share of Homemaker-Illinois.

For all of the above reasons, the defendants' motion for judgment n.o.v. and/or new trial is denied.