865 F.2d 1269
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Edward J. WILSMANN, Plaintiff-Appellant,
v.
The UPJOHN COMPANY and Homemakers, Inc., Defendants-Appellees.
 No. 88-1311.
 United States Court of Appeals, Sixth Circuit.
 Jan. 9, 1989.
 
 Before KEITH, KENNEDY and MILBURN, Circuit Judges.
 PER CURIAM.
 
 
 1
 Plaintiff-appellant appeals the district court's grant of summary judgment dismissing his action after our remand. For the reasons that follow, we affirm.
 
 I.
 
 2
 Edward Wilsmann commenced this action on June 27, 1977. To date, the litigation has produced four opinions,[1] including one in which we summarized Wilsmann's contentions as "totally implausible" and self-conflicting. Wilsmann v. Upjohn Co., 775 F.2d 713, 723 (6th Cir.1985), cert. denied, 476 U.S. 1171 (1986). The extensive factual basis of this action is reported in Wilsmann, 775 F.2d at 714-18. Briefly, Wilsmann alleged (1) federal securities laws violations and (2) breach of contract in connection with the transfer of his home health care business to the defendant, Upjohn Company, in 1969.[2]
 
 
 3
 Wilsmann asserted that Upjohn did not perform several oral promises allegedly made in connection with the transfer and his employment agreements. None of the alleged promises appear in the transfer or employment contracts. Discovery in this case lasted for six years.
 
 
 4
 A jury trial commenced on June 7, 1983. However, four months prior to trial, Wilsmann indicated he wanted to amend his complaint to add a claim of wrongful discharge based upon Toussaint v. Blue Cross & Blue Shield of Michigan, 408 Mich. 579, 292 N.W.2d 880 (1980). In response, Upjohn filed a motion in limine to prevent Wilsmann from adding a Toussaint claim. On the first day of trial, Wilsmann orally moved to amend his complaint to add a Toussaint claim. The district court denied Wilsmann's oral motion and granted Upjohn's motion in limine. At the close of all proof, Wilsmann moved pursuant to Fed.R.Civ.P. 15(b) to add a Toussaint claim, and this motion was also denied.
 
 
 5
 The case went to the jury on the securities fraud and breach of contract claims. The jury was instructed to consider the state contract claim only if it found for Upjohn on the federal securities claim. Wilsmann, 775 F.2d at 718. The jury found for Wilsmann on the securities fraud claim and awarded him $1,578,107.00 in damages. As instructed, the jury did not decide the state contract claim.
 
 
 6
 On appeal, we reversed, holding Wilsmann had failed to produce sufficient evidence to support the verdict. Id. at 720. We found two major problems with Wilsmann's case. First, his contentions as to Upjohn's alleged oral promises to pay him additional and substantial compensation were "essential[ly] implausib[le]." Id. Second, even if the jury believed one of his allegations, "Wilsmann's very theories as to the content of the promises to him were in conflict, with the result that the jury was left to sheer speculation." Id. We remanded the case "for the district court to determine whether it [would] continue to entertain the pendent claims under state law." Id. at 723.
 
 
 7
 After remand, Upjohn moved for summary judgment on the contract claim, and Wilsmann moved for partial summary judgment on Upjohn's liability for breach of contract. Wilsmann also moved to amend his complaint to add claims of wrongful discharge and common law fraud, but, alternatively, moved for a dismissal without prejudice to pursue all of his state claims in state court. The motion to amend was not granted.
 
 
 8
 In its opinion of February 20, 1988, reported at 681 F.Supp. 414, the district court decided that the interests of judicial economy, convenience and fairness to the litigants justified retention of jurisdiction over the state contract claim. In support of its decision, the district court noted that the securities fraud and breach of contract claims arose out of the same nucleus of operative facts,[3] the case had been in discovery for six years, a full trial on the merits had been held, and the only motions pending were those for summary judgment and dismissal solely on legal grounds. Wilsmann, 681 F.Supp. at 425.
 
 
 9
 The district court then granted Upjohn's motion for summary judgment, concluding that "the contract claim is inextricably woven with plaintiff's fraud claim." Id. at 426. In light of our previous holding that Wilsmann's contentions regarding the alleged securities fraud were "conflicting" and "totally implausible," id. at 426, quoting Wilsmann, 775 F.2d at 720-23, the district court reasoned that this court had "sub silentio decided the breach of contract issue as well. Where two or more claims are found conflicting and incapable of separation, the same principles of law which preclude recovery on one claim a fortiori preclude recovery on the alternate basis for relief." Id. In addition, the district court held that Wilsmann had failed to establish the elements of promissory estoppel necessary "to defeat Upjohn's statute of frauds defense." Id.
 
 II.
 A.
 
 10
 The granting of summary judgment must be reviewed in light of the Supreme Court's trilogy of 1986 decisions that clarified the proper analytical framework. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986); Celotex Corp. v. Catrett, 477 U.S. 317 (1986). In those cases, the Supreme Court explained that the standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251-52. "[T]he requirement is that there be no genuine issue of material fact." Id. at 248. The party opposing a summary judgment motion has the burden of producing proof to support its legal claim, particularly when the opposing party has had an opportunity to conduct discovery. Celotex Corp., 477 U.S. at 322-23.
 
 
 11
 In reviewing a district court's ruling on a motion for summary judgment, our role is identical to that of the district court, Hand v. Central Transport, Inc., 779 F.2d 8, 10 (6th Cir.1985) (per curiam), and is identical to the standard for granting a directed verdict under Fed.R.Civ.P. 50(a). Anderson, 477 U.S. at 251-56. All facts and inferences "must be viewed in the light most favorable to the party opposing the motion." Matsushita, 475 U.S. at 587 (quoting United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)).
 
 B.
 
 12
 Initially, we hold that the district court did not abuse its discretion in retaining jurisdiction over the state contract claim. While "[t]his circuit has moved away from the position that the court has discretion to retain jurisdiction over a pendent state claim where the federal claim has been dismissed before trial," Service, Hosp., Nursing Home and Public Employees U., Loc. 47 v. Commercial Prop. Serv., 755 F.2d 499, 506 n. 9 (6th Cir.) (emphasis added), cert. denied, 474 U.S. 850 (1985), when lengthy and substantial discovery has taken place, a full trial on the merits has been held, and the anchoring federal claim is dismissed on appeal, "the common sense policy of pendent jurisdiction," Rosado v. Wyman, 397 U.S. 397, 405 (1970), compels the conclusion that the district court acted within its discretion. See Carnegie-Mellon University v. Cohill, 108 S.Ct. 614, 618-19 (1988).
 
 C.
 
 13
 Wilsmann argues the district court erred in applying federal standards of review to Upjohn's motion for summary judgment. This argument is without merit. "Summary judgment practice in federal district courts is controlled by [Federal Rules of Civil Procedure] Rule 56, unaffected by state procedural rules." Schultz v. Newsweek, Inc., 668 F.2d 911, 917 (6th Cir.1982). Summary judgment in federal courts is proper only where the federal standard is satisfied. See Reinke v. O'Connell, 790 F.2d 850, 851 (11th Cir.1986).
 
 
 14
 Wilsmann further argues his contract claim raised material issues of fact. In support of his contention, he points to the fact that he is a certified public accountant, and his belief that Upjohn's selection of accounting methods of Homemakers' books exhibited bad faith. Wilsmann also cites to the Joint Appendix to flesh out these claims. However, the only evidence regarding any "installment" or "back end" payments related to the first letter of intent, which was superseded by the second letter of intent and the final written transfer and employment agreements. J.A. at 527-530, 1042. Our review of the record supports our previous conclusion that Wilsmann's contentions and theories of oral promises of additional compensation are "totally implausible" and self-conflicting. Wilsmann, 775 F.2d at 723. Therefore, the district court's grant of summary judgment on the state contract claim was proper.
 
 D.
 
 15
 In the alternative, the district court found that the Michigan Statute of Frauds would be a bar to Wilsmann's contract claim. We agree. Michigan law provides that employment agreements which by their terms cannot be performed within one year from their making "shall be void, unless that agreement ... is in writing and signed by the party to be charged therewith ..." Mich.Comp.Laws Ann. Sec. 566.132(a) (Supp.1988); see also Lovely v. Dierkes, 132 Mich.App. 485, ----, 347 N.W.2d 752, 753 (1984); Schipani v. Ford Motor Co., 102 Mich.App. 606, ----, 302 N.W.2d 307, 310 (1981).
 
 
 16
 Wilsmann claims that despite the integration clauses in the transfer and employment contracts, Upjohn made several oral promises of compensation. One of his claims is that he was to receive a second installment payment after he had worked for Upjohn for more than five years from the date the oral promises were allegedly made. This type of alleged oral agreement "is unenforceable because employment contracts for a term exceeding one year come within the Statute of Frauds." Schipani, 302 N.W.2d at 310. Moreover, Wilsmann's reliance on the testimony of former Upjohn employee Grant Young is misplaced, because his testimony relates to the first letter of intent, which was superseded by the second and the final agreements.[4]
 
 
 17
 On appeal, for the first time, Wilsmann attempts to avoid M.C.L.A. Sec. 566.132(1) by arguing that this case is controlled by the Statute of Frauds dealing with the sale of securities, M.C.L.A. Sec. 440.8319. This approach has no merit. Issues not raised in the district court may not be raised on appeal. Ralph Shrader, Inc. v. Diamond Int'l. Corp., 833 F.2d 1210, 1214 (6th Cir.1987). Furthermore, this newly raised argument does not salvage Wilsmann's case because section 440.839 requires, as a threshold matter, "separate evidence of a fixed quantity of securities and a definite price for those securities," which is not present in this case. Furthermore, there is no evidence of a writing to satisfy section 440.8319(a), nor an admission to trigger the applicability of section 440.8319(d).
 
 E.
 
 18
 Wilsmann additionally argues he has presented facts sufficient to show promissory estoppel. The district court found Wilsmann's reliance on this doctrine was misplaced, and we agree. As a threshold matter, the alleged oral promises purportedly relied upon must be sufficiently definite and clear to justify reliance. McMath v. Ford Motor Co., 77 Mich.App. 721 ----, 259 N.W.2d 140, 143 (1977). We have previously held that Wilsmann's alleged oral promises are "at least to some degree mutually inconsistent and even conflicting," and "totally implausible." Wilsmann, 775 F.2d at 723. Thus, the district court was within its discretion in finding Wilsmann's promissory estoppel arguments to be without merit.
 
 F.
 
 19
 Wilsmann's final argument is that the district court erred in denying his motion to amend his complaint to include a Toussaint claim. The record reflects that he filed this action on June 27, 1977, and that he amended his complaint twice, the second time on December 4, 1981. This was nearly eighteen months after the Michigan Supreme Court decided Toussaint. In his second amended complaint, Wilsmann added Counts VI and VII, which alleged procedural defects in his termination. On the first day of trial, in June 1983, Wilsmann sought for the first time to orally amend his complaint to include a Toussaint claim. He argued "the facts were there and it's just a matter of what theory you apply to it and Toussaint applies to a case that was started before Toussaint." J.A. at 99.
 
 
 20
 In denying leave to amend, the district court pointed to the interim between the Toussaint decision and the filing of Wilsmann's second amended complaint and found Wilsmann had not properly pleaded a Toussaint claim. As earlier stated, Wilsmann moved again at the end of the proof to amend his pleadings, and this motion was also denied.
 
 
 21
 Motions to amend pleadings under Fed.R.Civ.P. 15 are within the sound discretion of the trial court. Moore v. City of Paducah, 790 F.2d 557, 559 (6th Cir.1986) (per curiam); Chesapeake & O. Ry. Co. v. Newman, 243 F.2d 804, 813 (6th Cir.1957). Unjustified delay, in itself, is an insufficient basis for denying leave to amend, and "[a]buse of discretion occurs when a district court fails to state the basis for its denial or fails to consider the competing interests of the parties and the likelihood of prejudice to the opponent." Moore, 790 F.2d at 558-59. Here, however, the court stated the basis for its denial, after fully considering Wilsmann's severe delay and unexcused failure to add a Toussaint claim to his second amended complaint, and also noted the severe prejudice that would have befallen Upjohn should the amendment have been granted.
 
 
 22
 Moreover, this is not a case in which Wilsmann could not have discovered Toussaint evidence or the Toussaint doctrine itself until the last minute. In our view, the district court properly concluded that allowing Wilsmann to add a Toussaint claim on the first day of trial would have caused severe prejudice to Upjohn, because Toussaint raises the question of when an employer's statements or practices rise to the level of a contractual obligation, Toussaint, 292 N.W.2d at 892, while Wilsmann's second amended complaint concerned alleged procedural deficiencies in his termination. Adding a Toussaint claim would have compelled the parties to try a case vastly different from the one for which they had spent the preceding six years preparing. Finally, Wilsmann's excuse that his failure to add an explicit Toussaint claim was due to his misconception of the law "is not an excuse for the late presentation of an alternative theory of recovery." Troxel Mfg. Co. v. Schwinn Bicycle Co., 489 F.2d 968, 971 (6th Cir.1973), cert. denied, 416 U.S. 939 (1974).
 
 
 23
 With regard to Wilsmann's attempt to amend his complaint at the close of all proof under Fed.R.Civ.P. 15(b) (which provides for the amendment of pleadings to conform with issues "tried by express or implied consent of the parties" at trial), we would point out that the rule does not apply to issues "tried inadvertently." MBI Motor Co., Inc. v. Lotus/East, Inc., 506 F.2d 709, 711 (6th Cir.1974). Wilsmann does not show and indeed it does not appear that anything occurred at trial to indicate that Upjohn expressly or impliedly consented to try the Toussaint claim. Therefore, we conclude the district court did not abuse its discretion in denying Wilsmann's motions to amend his complaint either before trial or at the close of all proof.
 
 III.
 
 24
 Accordingly, the judgment of the district court is AFFIRMED.
 
 
 
 [1]
 In chronological order, see Wilsmann v. Upjohn Co., 572 F.Supp. 242 (W.D.Mich.1983); Wilsmann v. Upjohn Co., 583 F.Supp. 1060 (W.D.Mich.1984); Wilsmann v. Upjohn Co., 775 F.2d 713 (6th Cir.1985), cert. denied, 476 U.S. 1171 (1986); Wilsmann v. Upjohn Co., 681 F.Supp. 424 (W.D.Mich.1988)
 
 
 [2]
 The parties have referred to the transfer as both a "sale" and a "merger." According to the "Plan and Agreement of Merger," J.A. at 68-94, Homemakers merged into an Upjohn subsidiary after Wilsmann and the other Homemakers shareholders exchanged all of their stock for Upjohn common stock, at the ratio of one share of Homemakers for 225 shares of Upjohn common stock. J.A. at 74
 
 
 [3]
 In his complaint, Wilsmann asserted the state breach of contract claim stated in Count III "and the federal claims pled in Counts I and II derived from a common nucleus of operative facts." J.A. at 27
 
 
 [4]
 The parties make brief mention of the parol evidence rule that evidence of prior or contemporaneous agreements is not admissible to vary or contradict the terms of a complete and accurate integration. NAG Ent. v. Allstate Indus., 407 Mich. 407, 285 N.W.2d 770, 771 (1979) (per curiam); Ditzik v. Schaffer Lumber Co., 139 Mich.App. 81, 360 N.W.2d 876, 880 (1984) (per curiam). The rule poses the threshold question of whether the alleged final integration was intended to be a complete expression of the parties' agreement. NAG Ent., 285 N.W.2d at 771. Wilsmann has claimed at various times that his allegations of contemporaneous oral promises of "back door" payments and/or indefinite renewal of his employment contract until similar bonuses could be paid only supplemented or explained the terms of the writing, or that the transfer and employment agreements were not intended to be complete expressions of the parties' agreement, or the contracts were so ambiguous that they required parol evidence for clarification. Upjohn has responded that it has not sought to invoke the parol evidence rule, at least in that it has not opposed the introduction of evidence to supplement the written agreements. But Upjohn's basic defense has been that the evidence Wilsmann offers of prior oral agreements is in the words of this court, "implausible" and self-contradicting