**MARKS MANAGEMENT CORPORATION,**
Appellant,

v.

**RELIANT MANUFACTURING INC. Appellee.**

No. 00–CV–74404–DT.

United States District Court,
E.D. Michigan,
Southern Division.

Sept. 28, 2001.

Joseph C. Bird, Joseph A. Ahern, Stark, Reagan, James R. Waldvogel Troy MI, for appellant.

Judy B. Calton, Peter C. Bolton, Honigman, Miller, Bingham Farms, MI, for appellee.

## MEMORANDUM OPINION AND ORDER

HOOD, District Judge.

### I. FACTS.

Appellant Marks Management Services, Inc. (MMS) is a Birmingham, Michigan based sales agency whose president is Ronnie Fain Marks ("Marks"). Mr. Marks was also the president of Genesis, a supplier of automotive supplier, assemblies and door closure systems, who entered into purchase orders with General Motors Corporation ("GM") to supply parts. MMS is a sales representative agency which services companies in the business of manufacturing and supplying of automotive parts. MMS solicits customers and new sales opportunities. MMS solicited new sale opportunities from GM for Genesis and had the authority to sell and service all of Genesis' products. MMS and Genesis had an agreement that MMS would receive commissions of 3% on new

business obtained for Genesis and 1% on an existing business.

On October 3, 1998, Genesis filed a chapter 11 petition in bankruptcy court. As a result of the petition, Genesis' assets were sold to Reliant Manufacturing, Inc. ("Reliant") in June of 1999. Defendants contend that in the Bankruptcy Court's Order Regarding Procedure for Conducting an Auction Sale of Genesis' Assets dated April 26, 1999, the procedures for the sale of Genesis' assets were established. It is alleged that Genesis' purchase orders from GM were expressly excluded. MMS sued Reliant in Macomb County Circuit Court alleging that Reliant was operating under Genesis' contracts for the C/K v8, APV, and GMT 600 programs with GM and was therefore obligated to pay MMS the commission to which it would have been entitled to under MMS' sales representative contract with Genesis. Plaintiff contends that it continued to act as a sales representative for Defendant. When Plaintiff requested payment for the alleged overdue sales commissions Defendant refused to pay and the instant suit was filed. Plaintiff alleged: Count I—Breach of Contract; Count II—Violation of Sales Representative Commission Act pursuant to M.C.L.A. § 600.2961(d); Count III—Procuring Cause Doctrine (contract Implied In Fact); Count IV—Quantum Meruit—Unjust Enrichment, Contact Implied In Law; and in Count V—Requested an Order Compelling an Accounting.

On February 24, 2000, the cause of action was removed to the United States Bankruptcy Court for the Eastern District of Michigan, Southern Division. Reliant filed a Motion for Summary Judgment on March 8, 2000. MMS filed an Ex Parte Motion for Extension to file Response to Motion for Summary Judgment and delayed the time for filing a Response until after the Court made its ruling on the Motion for Remand. MMS filed a Motion for Remand and Motion for Leave to File an Amended Complaint. The Motion for Remand was denied by the Bankruptcy Court.

On August 29, 2000, Reliant filed a Notice of Filing of the August 10, 2000 Transcript of Deposition of Ron Marks, a Renewed Motion for Summary Judgment and a Brief in Support of Renewed Motion for Summary Judgment. MMS missed the filing deadline for its Response to the Renewed Motion for Summary Judgment. On September 21, 2000, MMS filed an Ex Parte Motion for Extension to File a Response to Renewed Motion for Summary Judgment Pursuant to LBR 9006–1 and an Amended Ex Parte Motion for Extension to File Response to Renewed Motion for Summary Judgment Pursuant to LBR 9006–(1)(b). On September 22, 2000, Judge Ray Reynolds Graves entered an Order Granting Summary Judgment of Dismissal against MMS and denied MMS Amended Ex Parte Motion for Extension of Time to File Response to the Renewed Motion for Summary Judgment Pursuant to LBR 9006–1(b). On September 25, 2000, MMS filed a Second Amended Ex Parte Motion for Extension of Time to File Response to Renewed Motion for Summary Judgment and Appellant's Brief in Support of its Response to Reliant's Renewed Motion Summary Judgment which was also denied on September 27, 2000. Reliant filed a timely Appeal of the Bankruptcy Court's Order granting of Summary Judgment alleging that a genuine issue of fact exist such that summary judgment was inappropriate.

## II. STANDARD OF REVIEW.

■■■ The standard of review for bankruptcy decisions is slightly different from the normal standard of review because district courts are not the triers of fact of

bankruptcy cases. *Investors Credit Corp. v. Batie (In re Batie)*, 995 F.2d 85, 88 (6th Cir.1993). The bankruptcy court makes initial findings of fact and conclusions of law. *Id.* If its decision is appealed to the district court, the district court is bound by the bankruptcy court's findings of fact unless they are clearly erroneous. Bankruptcy Rule 8013. The district court reviews the bankruptcy court's legal conclusions de novo. *Batie*, 995 F.2d at 88. The bankruptcy court's decision to grant summary judgment is purely a question of law. *Martin v. Ohio Turnpike Comm'n*, 968 F.2d 606, 609 (6th Cir.1992). Therefore, the district court review the bankruptcy court grant of summary judgment de novo.

## III. WHETHER A MATERIAL FACT EXISTS PRECLUDING SUMMARY JUDGMENT AS TO AN AGENCY AGREEMENT BETWEEN MMS AND RELIANT.

■ Appellee Reliant relies upon *In re AutoStyle Plastics, Inc.*, 227 B.R. 797 (Bkrtcy.W.D.Mich.1998). *Autostyle* filed its Chapter 11 petition and immediately sought approval of a transaction to lease and/or sell substantially all of its operating assets to Venture. The order approving the transaction provided that Venture was purchasing the assets free and clear of claims and transferring liens to proceeds. GM canceled its purchase orders to *Autostyle* and issued new ones to Venture for production of the very same products Autostyle had previously supplied GM. Car-Tec had been the sales representative for *Autostyle* and sued Venture in state court to hold it liable for commissions on purchase orders Venture had entered into with GM, alleging that there had been an implied assumption of *Autostyle's* purchase orders and the Car Tech sales representation agreement by Venture. Judge Stevenson granted summary judgment of dismissal to Venture. Because the facts of *Autostyle* and the instant case are so similar, Appellee contends that the granting of summary judgment similarly is appropriate.

Appellant MMS states that there are factual differences between the instant case and *Autostyle*. First, MMS alleges that the deposition testimony of Mark confirms MMS' efforts to negotiation on behalf of Reliant as to the sale of Genesis' assets to Reliant. Second, MMS contends that *Autostyle* is distinguishable because the negotiations occurred both prior to and after the sale in the present case. In contrast, in *Autostyle* the negotiations only occurred pre-sale. Lastly, MMS contends that it was instrumental in causing GM to allow Reliant to become a GM supplier, a fact completely absent in *Autostyle.*

MMS contends that Marks encouraged GM to award purchase orders to Reliant previously awarded to Genesis which included the M–Van Hinge, Delphi Engine Mount, Delphi Control Arm, Grand Prix and PT Inline 5 Manifold. After the bankruptcy sale, MMS contends that it continued to negotiate with GM on behalf of Reliant via a subagent named Bruce Van Hyfte. It is alleged that Mr. Van Hyfte continued to service GM purchase orders on behalf of Reliant through 2000. Reliant contends that the fact that MMS acted for Reliant both during and prior to the sale is critical because the activities evidence the anticipation of a continuing agency agreement. In light of the contention that MMS assisted Reliant in becoming a supplier for GM, there is a conferred obligation on the part of Reliant to pay MMS.

Appellant MMS also argues that the follow up service provided by Van Hyfte is sufficient procurement of future purchase orders. Such activity creates an implied agency agreement to pay continuing commission.

Reliant responds that the Order Procedure for Conducting the Auction Sale of Assets dated April 26, 1999 expressly excluded from the sale of assets Genesis' purchase orders from GM.

1. Subject to its compliance with the terms of this Order, Debtor is authorized and empowered to conduct an auction sales of its assets, specifically including, without limitation, its real and personal property interest ... but specifically excluding all cash and cash equivalents, all accounts and notes receivable, all tax refunds and all GM purchases orders (unless GM consents to such auction sale and/or transfer ...)

The Sale Order provides that the sale of assets to Reliant was free and clear of all liens, claims and interests. Reliant argues that the Asset Purchase Agreement did not include GM purchase orders with Genesis or the MMS/Genesis contract among the Assigned contract.

On July 26, 1999, prior to the Sale Order, GM did however enter into a supply agreement with Reliant similar to the previous GM contract with Genesis. All of the purchase orders with Genesis were canceled and new purchase orders were issued with Reliant. Reliant contends that MMS was not a part of the newly issued purchase orders to Reliant.

Reliant contends that the basis of MMS complaint is the GM purchase orders with Genesis. The deposition testimony of Marks upon which MMS relies is also based upon MMS' agreement with Genesis. Reliant argues that Marks' deposition testimony states that alleged agreement between MMS and Reliant occurred prior to the sale of Genesis' assets to Reliant. In contrast, Marks later stated in an affidavit that the agreement occurred after the closing. The testimony is contradictory.

Mr. Ronnie Fain Marks testified in his August 10, 2000 deposition that the sales agreement with Genesis was the basis for the agreement with Reliant other than the commission rate. *See* Deposition of Ronnie Marks, p. 161. It was Mr. Marks testimony that MMS was never terminated but that MMS continued to do work for Reliant. Peter C. Schmitt is the Chairman of Cortran Group of which Reliant is an affiliate. Mr. Schmitt was responsible for the negotiations and documentation for Reliant's acquisition of assets from the bankruptcy estate of Debtor Genesis Manufacturing Limited L.L.C. (See Affidavit of Peter C. Schmitt, ¶ 3) Mr. Schmitt attests that the Asset Purchase Agreement did not include purchase orders issued by General Motors Corporation ("GM") to Debtor or a sales representative contract between Debtor and Mark Management Services, Inc. ("MMS"). *Id.* at ¶ 8. Reliant and GM negotiated and reached an agreement acceptable to them as to the terms of GM purchase orders to be issued to Reliant. GM issued new purchase orders to Reliant. Reliant was not assigned and did not become responsible for GM purchase orders which has been previously issued to Debtor. *Id.* at ¶ 9.

John Wagner is the GM representative who was involved in the negotiation of the Supply Agreement between GM and Reliant. (See Affidavit of John Wagner, ¶ 3) Mr. Wagner attests that:

Marks had no involvement with negotiating the Supply Agreement. Neither I, not to the best of my knowledge anyone on my staff, had any discussions with Mr. Marks regarding GM entering into the Supply Agreement with Reliant. In fact, prior to entering into the Supply Agreement, I was informed by representatives of Reliant that Marks would not be involved in the negotiation process on Reliant's behalf nor be involved in the

operations of Reliant. GM's decision to enter into the Supply Agreement was based upon GM's satisfaction with the terms of the Supply Agreement and GM's assessment of the capabilities of Reliant. Marks did not procure nor influence GM's entry into the Supply Agreement.

Id. at ¶ 5.

In an August 13, 1999 letter from Mr. Marks to Ken Buford, Mr. Marks states that "[o]ver the past months, we have had several conversations concerning whether Reliant, as Genesis' successor, intends to retain MMS' services as the professional sales agent for the company under new ownership." Mr. Marks further stated, "[i]t is not clear whether you want MMS to continue to solicit new business, service the existing business, do both or neither.... We are happy to continue to act on Reliant's behalf, consistent with the existing contract, but we need confirmation that you want MMS to continue to do this."

In an August 25, 1999 response, Mr. Buford stated, "[w]ith respect to your question regarding customer confusion and MMS' relationship with Reliant, as you know Reliant did not assume Genesis' agreement with MMS, and therefore all customer inquiries should be directed to Reliant's Vice President of Sales, George Vickers." ... From the outset our discussions regarding any possible future sales relationship we informed you that a new agreement would have to be negotiated. To date, we have not been able to come to terms. Reliant's position remains unchanged and, unless and until we can reach a signed written agreement, Reliant does not have any obligation to you or MMS.

It is also important to note that the Order Regarding Procedures for conducting Auction Sale of Assets issued by Judge Ray Reynolds Graves states:

Subject to it compliance with the terms of this Order, Debtor is authorized and empowered to conduct an auction sale of its Assets, specifically including, without limitation, its real and personal property interest, including, without limitation, its machinery and equipment; inventory; cranes, forklifts and hi-los; machine tools, customer lists; leasehold interests; all records and files regarding ownership, lease and/or maintenance of machinery and equipment; existing phone numbers, and good will, if any; but specifically excluding all case and cash equivalents, all accounts and notes receivable, all tax refunds and all GM purchase orders (unless GM consents to such Auction Sale and/or transfer), outside the ordinary course of business in accordance with the procedures set forth herein ("Auction Sale"), which procedures are approved in all respects. The terms and conditions of this Order will be strictly enforced by this Court.

Based upon the evidence in the record, this Court finds that there is no genuine issue of material fact exists that Plaintiff continued to act as sales representative for Defendant before and after the bankruptcy sale. It is clear from the Bankruptcy Court's Order, the affidavits, correspondence between the parties, and Mr. Marks' deposition that there was no implied agency agreement to pay continuing commission. The Bankruptcy Order specifically excluded "all GM purchase order from the sale of assets." The correspondence between the parties support a finding that any relationship between the parties required negotiations. Mr. Marks' August 13, 1999 letter to Mr. Buford acknowledges that there was a question regarding whether there was intention to retain MMS as the professional sales agent for Reliant. Therefore, this Court affirms the Bankruptcy Court's grant of Summary

Judgment in favor of Reliant as a matter of law.

## IV. STATUTE OF FRAUDS

MMS contends that its claim is not barred by the statute of frauds. MMS claims that the alleged agency agreement is capable of being performed within one year even though the purchase orders state that the contract continues automatically for several years. MMS contends that Marks testimony admits that the purchase order contracts generally continue for a period of years. Marks described the programs with GM as ones which will continue for a number of years. MMS argues that the length of the purchase order contract has nothing to do with the length of an agency relationship. The GM Purchase Orders are cancellable on notice and terminable at will. MMS states that the court in *Schipani v. Ford Motor Co.,* 102 Mich.App. 606, 302 N.W.2d 307 (1981) held that a contract for a specific term, beyond one year, is within the Statute of Frauds because it cannot be performed within one year. In contrast, MMS contends that the agency agreement at issue is for no specific term and can be performed in one year. Marks contends that GM supply contracts are required contracts which last for as long as GM makes the model car or truck in question.

MMS distinguishes *Dumas v. Auto Club Ins. Ass'n,* 437 Mich. 521, 473 N.W.2d 652 (1991) stating that it does not stand for the proposition that a post-termination commission obligation coupled to an oral agency agreement is within the statute of frauds. MMS reads the *Dumas* opinion as holding that the promise that renewal commissions would continue at a specific rate "forever" was unenforceable only because the renewal commissions could not vest, by the terms of the commission agreement, before one year had lapsed from the date

of hire. The entitlement of the commission could not accrue for one year and the promise was not within the statute of frauds. Similarly, there is no accrual term before MMS becomes eligible for commission. Commissions are payable and due as GM buys parts from the Appellee and the pay which continues for years is not a bar to MMS' claims.

Reliant contends that the August 25, 1999 letter relied upon as the basis for the agreement is the only writing that MMS has from Reliant. There is no written agreement (only an alleged oral agreement) that Reliant and MMS would conduct business in the same manner as MMS and Genesis. Reliant offers the testimony of Marks which states that the alleged oral agreement with Reliant could not be performed with one year because Reliant is obligated to pay MMS commissions for the length of the GM programs which are more than one year. By way of example Reliant offers the APV program which continues until 2003.

Reliant relies upon *Ordon v. Johnson,* 346 Mich. 38, 77 N.W.2d 377 (1956) for the proposition that nothing short of full performance by both parties takes the contract out of the operation of the statute of fraud. Reliant also quotes *Marrero v. McDonnell Douglas Capital Corp.,* 200 Mich.App. 438, 505 N.W.2d 275 (1993) where the court granted a motion for summary disposition dismissing an employee's breach of an alleged three year oral employment agreement. The court premised its reasoning upon the fact that the Plaintiff admitted in its deposition that the employment contract was oral and could not be performed within one year. Marks admitted in his deposition that the alleged contract was oral and exceeds one year.

Michigan law provides that employment agreements which by their terms cannot be performed within one year from

their making "shall be void, unless that agreement ... is in writing and signed by the party to be charged therewith ..." Michigan Comp. Laws Ann. § 566.132(a); *Wilsmann v. Upjohn Co.,* No. 865 F.2d 1269, 1989 WL 835 (6th Cir.1989). The mere fact that the contract may or may not be performed within the year does not bring it within the statute. *Dumas v. Auto Club Insurance Association,* 437 Mich. 521, 533, 473 N.W.2d 652 (1991). The rule is that if it is capable of being completed within a year, it is not within the statute. *Id.* Under Michigan law, oral contract of employment which did not provide for a specified period of employment constituted employment for indefinite time terminable at will of either party, upon termination of employment by employer, had no cause of action for breach of such contract. *McLaughlin v. Ford Motor Company,* 269 F.2d 120 (6th Cir.1959).

■ The court in *Hill v. General Motors Acceptance Corporation,* 207 Mich. App. 504, 509–10, 525 N.W.2d 905 (1994) states that "[i]f there is any possibility that an oral contract is capable of being completed within a year, it is not within the statute of frauds, even though it is clear that the parties may have intended and though it probable that it would extend over a longer period and even though it does extend." The court stated that the statute of frauds did not apply to an original lease agreement because the lease was capable of being performed within one year to its making although it was a five years lease but the plaintiff has a option to purchase at the end of the first year. The statute of fraud declares void an unwritten agreement that cannot be performed with one year. *Id.*

■ The condition precedent to the application of the statute of frauds is the existence of such an agreement. *Id.* There are two separate issues in a statute of frauds defense, whether there is sufficient evidence to infer the existence of a contract, and second, whether the statute of frauds invalidated that contract. *Hoehner v. Western/Casualty & Surety Co.,* 8 Mich.App. 708, 714–15, 155 N.W.2d 231 (1967).

■ Based upon the testimony of Mr. Marks and the rationale of *Hill,* the claimed oral agreement in this case is capable of being performed in year and therefore is governed by the statute of frauds. It is well settled that "a contract for an indefinite term has traditionally been considered capable of performance within the first year." *Adell Broadcasting Corp. v. Cablevision Industries,* 854 F.Supp. 1280, 1290 (E.D.Mich.1994) citing *Dumas,* 437 Mich. 521, 473 N.W.2d 652 (1991). However, summary judgment remains appropriate in this matter because the evidence does not support a finding that there was an existence of an oral agreement. Therefore, there is no genuine issue of material fact as to the formation of a supposed agreement. A conclusory allegation that an oral agreement existed is not enough to survive a motion for summary judgment.

## V. EVIDENCE RELIED UPON WHICH IS NOT A PART OF THE RECORD BELOW.

Reliant contends that MMS attempts to rely upon statements not supported by or contradicted by the record. MMS relies upon a Terms Sheet which states that the "continuation of MMS as the sales representative was a condition to awarding the supply contract as Reliant had no previous automotive experience and GM was looking to MMS to provide Reliant with the necessary expertise and experience as a part supplier." Reliant states that the Terms Sheet has a condition precedent which states "[a]ssuming and/or negotiat-

ing agreements acceptable to Purchaser with customers, suppliers, sales agent(s), the Landlord and the UAW by June 30, 1999." The Terms Sheet was an agreement between Cortran (a Reliant affiliate) and Genesis. GM and MMS were not a party to the Terms Sheet. Reliant offers the affidavit of John Wagner to contradict MMS' allegation that the contract between Reliant and GM was premised upon MMS' involvement. Mr. Wagner attests to the fact that GM was not looking to MMS at all as a part of entering into a supply agreement and purchase orders with Reliant.

 As a general rule, appellate courts do not consider any issue not passed on below. *In re Morris*, 260 F.3d 654, (6th Cir.2001). The court may, however, deviate from this general rule in an exception case, if declining to review the issue, will produce plain miscarriage of justice, or if appeal presents a particular circumstance warranting departure. *Id.*

Based upon Magistrate Judge Carlson's November 30, 2000 Order which denied Reliant's Motion to Strike Items Designated for Record Appeal, this Court accepted the Terms Sheet as a part of the Bankruptcy Appeal Record. This Court finds that the Terms Sheet does not support MMS contention that there was a continuation of the MMS/Genesis contract. The Terms Sheet merely states under Heading 7 Conditions Precedent that "[a]ssuming and/or negotiating agreements acceptable to Purchaser with customers, suppliers, sales agent(s), the Landlord and the UAW by June 30, 1999." The sales of the Genesis assets were conditioned only on the assumption and/or negotiation of agreements which were acceptable to Reliant. The evidence presented to the Court shows that an assumption of the agreement between Genesis and MMS was not acceptable to Reliant.

## VI. FAILURE TO RESPOND TO THE RENEWED MOTION FOR SUMMARY JUDGMENT IN TIMELY MANNER.

 Appellant argues that the Bankruptcy Court abused its discretion in granting Appellee's Renewed Motion for Summary Judgment. Appellee contends that the Bankruptcy Court entered the order granting its Renewed Motion for Summary Judgment pursuant to LBR 9014–1 which states in pertinent part:

(B) The motion shall be accompanied by

(2) a notice to the respondent that the respondent has 15 days (20 days for matters covered by the F.R. Bankr.P. 2001(a)) after service to file and serve a response which complies with F.R. Civ.P. 8(b), (c), and (e), and that if such a response is not timely filed and served, the Court may grant the motion without a hearing in a form consistent with the form notice available from the clerk;

\* \* \* \*

(c) If a response is not timely served, the movant may file a certification so stating together with the proposed order and a copy of the original proof of service of the motion. If the motion was served by mail, the movant shall file a certification of the response until the 19th day after service (or 24th day in the case of matters covered by F.R. Bankr. 900(f)). The Court may enter the proposed order without a hearing. . . .

Reliant filed its Renewed Motion for Summary Judgment on August 29, 2000. MMS was served with notice. On September 19, 2000 when MMS had not filed a response (21 days after the Renewed Motion), Reliant filed certification under LBR 9014(c) and the Court granted summary judgment on September 22, 2000. Reliant contends that the action of the Bankruptcy

Court was proper in that its motion was unopposed.

Reliant further contends that the Bankruptcy Court did not abuse its discretion in denying MMS' Motions for Extension of Time to File a Response once the time had lapsed. Fed.R.Bankr.P 9006(b)(1) allows the extension of time for a required action after the expiration of the specified period only as a result of excusable neglect. Reliant asserts that MMS excuse of failure to calendar the date due to interoffice error is not excusable.

 The decision to deny an extension of time to respond to a motion for summary judgment is within the district court's discretion. *Ginett v. Federal Express Corp.,* No. 97–5481, 1998 WL 777998 (6th Cir. October 21, 1998)(unpublished opinion). Such denial is reviewed for an abuse of discretion. *Okocha v. Case Western Reserve Univ.,* 1992 WL 162561 at *2 (6th Cir. July 13, 1992). An abuse of discretion is apparent when the appellate court is "firmly convinced" that the lower court has erred. *Bush v. Rauch,* 38 F.3d 842, 848 (6th Cir.1994). A district court abuses its discretion when it relies on clearly erroneous findings or fact, or when it improperly applies the law or uses an erroneous legal standard. *Black Law Enforcement Officers Ass'n v. City of Akron,* 824 F.2d 475, 479 (6th Cir.1987). In *Ginett,* the Plaintiff argued that he failed to file a response to the motion for summary judgment in a timely manner because the Defendant's delay in responding to interrogatories required Plaintiff to review in excess of 200 pages of personnel information. The court held that Plaintiff had two weeks from the date he received the responses until the time to respond which was ample to prepare a response. The court found nothing to support a conclusion that the district court abused its discretion in denying the motion for an extension of time to respond to a motion for summary judgment.

 In *Rice v. Consolidated Rail Corp.,* 1995 WL 570911 (6th Cir.1995), the court found that Plaintiff failure to respond to defendant's motion for summary judgment "did not constitute mistake, inadvertence, surprise or excusable neglect." The district court based its decision on Local Rule 8:8.1(d). The Ninth Circuit stated that "[a] district court is entitled to promulgate rules governing its operation so long as those rules are not inconsistent with federal rules." *United States v. Warren,* 601 F.2d 471, 473 (9th Cir.1979). Only in rare cases will the exercise of discretion with the application of the Local Rules be questioned. *Id.* at 474. The failure to respond to a motion for summary judgment or to request an extension to file a response thereto is inexcusable neglect. *Rice,* 1995 WL 570911 at *6 citing *Kendall v. Hoover Co.,* 751 F.2d 171, 175 (6th Cir. 1984).

This Court finds that the Bankruptcy Court did not abuse its discretion in denying Appellant's Ex parte Motion for Extension of Time to Respond to Reliant's Renewed Motion for Summary Judgment pursuant to LBR 9014–1 which states in pertinent part that a respondent has fifteen days to respond to a motion and where a response is not filed in a timely manner, the Court may grant the motion without a hearing.

## VI. CONCLUSION

Accordingly,

IT IS ORDERED that the Bankruptcy Court's grant of Summary Judgment in favor of Appellee (Docket No. 1, filed October 2, 2000) is AFFIRMED.